**SO ORDERED.**

**SIGNED this 10th day of December, 2019.**



_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

In re:                          )
                                )
Rodney Wayne Etheridge and      )          Case No. 18-11303
Sandra Lynn Etheridge,          )
                                )
          Debtors.              )          Chapter 7

### Order Denying Application to Compensate Special Counsel for Trustee

THIS CASE is before the Court on the Application to Compensate Special Counsel for Trustee (the "Fee Application"), ECF No. 45, filed by the chapter 7 trustee, Gerald S. Schafer (the "Trustee"), on June 20, 2019.  For the reasons set forth herein, the Fee Application will be denied.

### Jurisdiction and Authority

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred this case and this proceeding to this Court by its Local Rule 83.11.  This is a core proceeding under 28 U.S.C.

1

§ 157(b)(2)(A) in which this Court has statutory and constitutional authority to enter final judgments.

## Background

Rodney Wayne Etheridge and Sandra Lynn Etheridge ("Debtors") commenced this case by filing a voluntary petition for relief under chapter 7 on December 5, 2018. ECF No. 1. The first meeting of creditors under 11 U.S.C. § 341 was set for December 27, 2018, making February 25, 2019, the deadline for creditors to commence an action to determine the dischargeability of any debt. See 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007(c).

At the time of filing, the male Debtor was the plaintiff in a consolidated lawsuit relating to a Steri-Clean Inc. ("Steri-Clean") franchise, which was pending in state court (the "State Court Litigation"). ECF No. 1 at 51. On January 4, 2019, the Trustee filed the Application to Appoint Special Counsel (the "Application to Employ"), seeking authorization to employ Harry G. Gordon as special counsel to represent the Trustee in the State Court Litigation. ECF No. 11. The Application to Employ indicated that Mr. Gordon had been representing the male Debtor in the State Court Litigation since it began in August 2018. Id. at 1. The Application to Employ further indicated that the State Court Litigation "[had] been progressing and [was] presently in the mediation phase." Id. The Trustee requested that Mr. Gordon be compensated on a contingency basis whereby Mr. Gordon would receive

2

45% of the gross amount recovered in the State Court Litigation. Id. at 2.

In connection with the Application to Employ, the Trustee submitted an Affidavit of Disinterested Parties (the "Gordon Affidavit in Support of the Application to Employ"). Id. at 3. The Gordon Affidavit in Support of the Application to Employ, in its entirety, provides:

> I, Harry G. Gordon, Attorney at Law, make this solemn oath as follows:
>
> 1.   I am a licensed Attorney and licensed in the State of North Carolina and have no conflict of interest in this proceeding.
>
> 2.   I am qualified for employment as Special Counsel to the Trustee under § 327 of the Bankruptcy Code.

Id.  The Court approved the Application to Employ on January 8, 2019.  ECF No. 13.

On January 23, 2019, Steri-Clean, a defendant in the State Court Litigation, moved the Court to reconsider its Order authorizing the employment of Mr. Gordon as special counsel (the "Motion to Reconsider").  ECF No. 16.  Steri-Clean argued that Mr. Gordon was not qualified to serve as special counsel under § 327 because Mr. Gordon is the largest creditor listed in the Debtors' Schedules.[1]  Id. at 3.  Steri-Clean also noted that neither the

---

[1] Debtors listed Mr. Gordon in Schedule E/F with a claim in the amount of $81,579.39.  ECF No. 1 at 35.  Mr. Gordon subsequently filed a claim in the amount of $96,880.11.  Claim No. 5-1.  In his claim, Mr. Gordon asserts total fees in excess of $101,000 incurred pre-petition, but applies in excess of $10,000 of credits against the outstanding fees.  Id.  The underlying invoices are not attached to the claim.  Id.  Nevertheless, at the current hourly rate

Application to Employ nor the Gordon Affidavit in Support of the
Application to Employ disclosed Mr. Gordon's status as a creditor
in violation of Fed. R. Bankr. P. 2014.  Id. at 3–4.  Steri-Clean
argued that Mr. Gordon's interest as a creditor created a conflict
of interest because he was advising the Trustee to pursue meritless
claims solely as a result of his economic interest in the outcome
of the litigation.  Id. at 4. The Court found that Mr. Gordon's
claim against the estate did not create an impermissible conflict
under § 327(c) and denied the Motion to Reconsider.  ECF No. 23.[2]
Despite denying the Motion to Reconsider, the Court noted for the
record that Mr. Gordon and the Trustee had violated Rule 2014 by
failing to disclose Mr. Gordon's connections with the Debtors.[3]

---

charged by Mr. Gordon reflected in his fee application, the total fees indicate
that Mr. Gordon contends that he spent in excess of 269 hours on this matter
pre-petition.  Mr. Gordon's $96,000 pre-petition claim represents approximately
70% of the total $139,199.20 general unsecured claims filed in this case.

[2] The Court also expressed concerns that Steri-Clean was using the Motion to
Reconsider as a litigation tactic and may lack standing to bring the motion
because it had not filed a claim in the case.  Nevertheless, the Court denied
the motion solely on the basis that the pre-petition claim did not, standing
alone, create a conflict of interest with the estate.

[3] The record reflects the following exchange between the Court and Mr. Gordon
at the hearing on February 12, 2019:

> The Court:  Mr. Gordon, I think what I'm going to have you – what
> we're going to come out of this hearing with is that
> I'm going to deny the motion to reconsider, I'm going
> to tell you that I'll address at some point whether
> your claim for pre-petition fees ought to be allowed or
> whether I should adjust your . . . your contingency fee
> because of a failure to disclose. And if you're
> unwilling to represent the estate going forward on
> those terms, that's something between you and Mr.
> Schafer and I'll hear a motion to withdraw if you want
> to hear – if you want to withdraw.  But you didn't
> disclose, the rules require disclosure.  You can't rely
> on the schedules and those are very serious rules in

The Court then warned Mr. Gordon that the omission was extremely serious and that the failure to disclose his connections with the Debtors, including his claim for pre-petition attorney's fees, would be relevant when the Court considered whether to allow his pre-petition claim[4] or adjust his compensation as special counsel.[5] Nevertheless, Mr. Gordon—fully informed of the risk that the Court might deny allowance of compensation for his services as special counsel—continued his representation of the Trustee, and never filed a motion to withdraw.   Moreover, Mr. Gordon did not thereafter supplement his previous affidavit to the Court until he filed additional affidavits in support of the Fee Application presently before the Court in April, ECF No. 40, and July of 2019, ECF No. 50, and he did not file a proof of claim setting forth the total amount of pre-petition fees in excess of $101,000 until April 8, 2019.  Claim No. 5-1.

---

|             | this Court and I'm not going to just act like they didn't happen. |
|-------------|-------------------------------------------------------------------|
| Mr. Gordon: | Your Honor, with all due respect, that was not my petition.  I . . . I didn't file it . . . |
| The Court:  | Yeah, you know what? You were being – the application was for your employment and you were being employed and an argument that you didn't do the application or you have no responsibility for the affidavit or the content of the affidavit you signed – in light of the requirements of Rule 2014 – is not going to carry any weight at all with this Court. |

ECF No. 22 at 0:21:00-0:22:00.

[4] No party in interest has objected to the pre-petition claim.

[5] See supra note 3.

Ten days after the Court denied the Motion to Reconsider, Mr. Gordon moved to extend the deadline to object to the Debtors' discharge or commence an action to determine the dischargeability of any debt. ECF No. 25. The Court granted Mr. Gordon's unopposed motion and extended the deadline until March 27, 2019. ECF No. 29. On March 25, 2019, the Trustee filed the Application to Approve Settlement (the "Motion to Approve Settlement"), ECF No. 28, requesting authorization to settle the State Court Litigation for $50,000.00. Two days later, Mr. Gordon commenced an adversary proceeding against the Debtors, requesting that the Court either deny the Defendants' discharge or determine that the debt owed by the Defendants to Mr. Gordon is nondischargeable.[6] ECF No. 31. On April 8, 2019, Mr. Gordon filed a proof of claim in the amount of $96,880.11 for pre-petition attorney's fees related to the State Court Litigation. Claim No. 5-1.

Although the Bankruptcy Administrator filed an objection to the Motion to Approve Settlement on April 18, 2019, ECF No. 39, the Bankruptcy Administrator did not object to the proposed

---

[6] Gordon v. Etheridge, Adv. Pro. No. 19-02008 (Bankr. M.D.N.C.) (docket citations designated as "Adv. Pro. Dkt."). In his complaint and a proposed amended complaint, Mr. Gordon asserts, inter alia, that Debtors misrepresented ownership of their residence in order to induce him to continue to represent them, and that they made material misrepresentations in their franchise application with Steri-Clean. The latter of these contentions is directly adverse to the claims and defenses previously asserted by Debtors and the Trustee in the Steri-Clean litigation. See e.g., Adv. Pro. Dkt. No. 32 ¶¶ 36, 50. Mr. Gordon has been inconsistent in both this case and the filings in the adversary proceeding with respect to when he either reviewed or became aware of the contents of the franchise application. Id. ¶¶ 13-15, 34.

settlement itself.  _Id._   Instead, the Bankruptcy Administrator objected to the allowance of a 45% contingency fee to Mr. Gordon "in light of the fact that Mr. Gordon is now taking the position that approximately $91,000.00 in attorney fees owed to him by the Debtors are non-dischargeable and that he should be able to pursue recovery of the entire amount owed to him."  _Id._ at 3.   The Bankruptcy Administrator argued:

> It is a reasonable inference that the Trustee agreed to special counsel's representation in this matter on a 45% contingency fee basis—a fee above the market standard—in consideration in part of the work performed by Mr. Gordon in pursuit of the Debtor's claims prior to the filing of the case, and the knowledge he had of the case on the petition date. Therefore, the contingency fee compensates Mr. Gordon for both post petition and pre-petition work. The Trustee and other parties in interest, who might have objected to the proposed employment and terms of compensation, could not have anticipated at the time the court approved a 45% contingency fee that Mr. Gordon would later assert that his claim for pre-petition attorney fees was non-dischargeable, so as to assert his entitlement to be paid in full for that work, and receive a contingency on the recovery. The BA therefore objects to the payment of a 45% contingency fee.

_Id._ at 3–4.  On April 22, 2019, Mr. Gordon filed the Affidavit of Harry G. Gordon in Support of Attorney Fees ("Gordon Affidavit in Support of the Fee Application"), ECF No. 40, and the Special Counsel's Response to Bankruptcy Administrator's Objection to Motion to Approve Settlement Agreement.  ECF No. 41.  Mr. Gordon attached time records to the Gordon Affidavit in Support of the Fee Application, which indicated that Mr. Gordon and his staff

expended a total of 116.35 hours of billable time in connection with his representation of the Trustee. ECF No. 40-1. Mr. Gordon claimed that his requested fee would be $31,986.75 if he and his staff were compensated at their customary hourly rates. Id.

On May 2, 2019, the Court entered the Order Granting the Motion to Approve Settlement. ECF No. 43. However, the Court's May 2 Order, in relevant part, provided, "Trustee is not authorized to pay any fees to Special Counsel for the Trustee and any award of fees shall be made by separate order following an application[.]" Id. at 2.

On June 20, 2019, the Trustee filed the Fee Application, requesting authorization to pay Mr. Gordon $22,500.00, which is 45% of the gross proceeds recovered in the State Court Litigation. ECF No. 45. The Fee Application also provided:

> Should the Court not go forward with the prior Order and 45% contingency-fee, I request the Court award Harry Gordon his usual and customary fee as set forth in his Affidavit (Doc. 40) as may be supplemented by time assisting the Trustee on this specific matter since the April 22, 2019 date of his Affidavit.

Id. at 3. The Bankruptcy Administrator objected to the Fee Application on July 9, 2019. ECF No. 49. Because "neither the Application to Employ Special Counsel nor the Order authorizing the employment of special counsel specifie[d] that Mr. Gordon would be compensated under § 328(a)," the Bankruptcy Administrator argues that Mr. Gordon's compensation should be determined

8

pursuant to § 330.   *Id.* at 3–4.   The Bankruptcy Administrator further argues that a 45% contingency fee is unreasonable under § 330 because "Mr. Gordon served as special counsel to the trustee for a total of four months, the litigation was already at the mediation phase when he was appointed as special counsel, and the work performed generally consists of preparing for mediation and attending a mediation."   *Id.* at 4.

Mr. Gordon responded to the Bankruptcy Administrator's objection by filing the Supplemental Affidavit of Harry G. Gordon in Support of Attorney Fees ("Gordon Supplemental Affidavit in Support of the Fee Application"), ECF No. 50,[7] and the Special Counsel to the Trustee's Response to Objection of Bankruptcy Administrator to Motion to Compensate Special Counsel.   ECF No. 51.   Mr. Gordon argues that the requested 45% contingency fee was reasonable under the circumstances of the case and alleges that he disclosed his status as a creditor to the Trustee and the Bankruptcy Administrator prior to his retention as special counsel.   *Id.* at 3–4.   In the Gordon Supplemental Affidavit in Support of the Fee Application, Mr. Gordon avers as follows:

> Since my prior Affidavit was filed on April 22, 2019 (Doc #40), my paralegal and I have spent many additional

---

[7] The Court notes the comparative paucity of the affidavit filed in support of his original application with the affidavit in response to the Bankruptcy Administrator's objection.   <u>Compare</u> Gordon Affidavit in Support of the Application to Employ, ECF No. 11 at 3, <u>with</u> Gordon Affidavit in Support of the Fee Application, ECF No. 40, <u>and</u> Gordon Supplemental Affidavit in Support of the Fee Application.   ECF No. 50.

> hours dealing with getting the settlement approved,
> following up with [d]ismissals, and dealing with the
> necessary [a]pplication, Affidavits of the Trustee (Doc
> #45), my own Affidavit (Doc #40), and matters required
> to get paid for legal services provided.  This includes
> responding to the Bankruptcy Administrator's Second
> Objection and will include attending a hearing.  I
> estimate I will have <u>more than</u> 5 additional hours of
> attorney time at $375.00 per hour and an equal number of
> hours of paralegal time at $145.00 per hour for a total
> of $2,600.00 in additional time.

ECF No. 50 ¶ 13 (emphasis in original).  Accordingly, Mr. Gordon claims that his requested fee would be $34,586.75 if he and his staff were compensated at their customary rates, making the total putative fees expended by Mr. Gordon in connection with the State Court Litigation exceed $135,000.  On July 22, 2019, Mr. Gordon filed an amended response to the Bankruptcy Administrator's objection to the Fee Application.  ECF No. 55.  On August 14, 2019, the Debtors responded to the Fee Application, requesting that the Court deny the Fee Application due to Mr. Gordon's failure to disclose "that he had a substantial pre-petition claim that he believed to be non-dischargable [sic]."  ECF No. 63 at 5.

The Court held a hearing on the Fee Application on August 19, 2019.  At the hearing, the Trustee appeared, Mr. Gordon appeared, Benjamin D. Busch appeared on behalf of the Debtors, and Robert E. Price Jr. and Sarah D. Bruce appeared on behalf of the Bankruptcy Administrator.  On request of the parties, the Court took judicial notice of the record in the case.  The Court has considered the affidavits filed in connection with the Application to Employ and

in connection with the Fee Application.  No further evidence was offered by any party in interest.  Following the arguments of counsel, the Court took the matter under advisement.

## Discussion

**1.   Reasonableness of the Requested Fees Under Section 330**

A trustee may retain special counsel under § 327, subject to certain restrictions and court approval.  Special counsel's compensation is determined under either § 328 or § 330.  Under § 328, and with the Court's approval, a trustee may retain special counsel "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 330, on the other hand, provides that "the court may award . . . a professional person employed under section 327 . . . (A) reasonable compensation for actual, necessary services rendered by the . . . professional person . . . and (B) reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  The key distinction between retention under § 328 and § 330 is that "[f]ee arrangements approved by a court under Section 328 prevent the court from later modifying the fee arrangement, except in rare circumstances."  In re First St. Mart, Inc., 450 B.R. 581, 583 (Bankr. M.D.N.C. 2011) (citing In re Nat'l Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997)).  "Because the standard for compensation of professionals under Section 328(a) is

11

different than the standard under Section 330(a), professionals should unambiguously state the basis for employment in their application for employment." First St. Mart, 450 B.R. at 584.

In this case, neither the Application to Employ, ECF No. 11, nor the Order approving the Application to Employ, ECF No. 13, provided that Mr. Gordon was being retained under § 328. Therefore, the reasonableness standard of § 330 applies.[8]

Section 330 sets forth a non-exclusive list of factors for the Court to consider "[i]n determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person." 11 U.S.C. § 330(a)(3). Section 330, in relevant part, provides:

> [T]he court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

---

[8] Even if Mr. Gordon were retained under § 328, the Court would not award Mr. Gordon a 45% contingency fee due to his violation of Rule 2014 by failing to disclose his substantial unpaid fees related to the matter in connection with his application and his potential positional conflicts regarding the veracity of Debtor's franchise application, the latter of which did not come to light until the filing of the dischargeability complaint after the Court denied the Motion to Reconsider. See In re Begun, 162 B.R. 168, 178 (Bankr. N.D. Ill. 1993) (holding that a broker's previously approved contingency fee could be reduced under § 328(a) when the contingency fee was improvident in light of undisclosed connections between the broker and the trustee's law firm).

> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. The Fourth Circuit has held that the Court should also consider the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Harman v. Levin, 772 F.2d 1150, 1152 n.1 (4th Cir. 1985) (citing Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). "The burden of proof as to the reasonableness of the requested compensation rests with the applicant." In re Vernon-Williams, 377 B.R. 156, 184 (Bankr. E.D. Va. 2007) (quoting Boleman Law Firm, P.C. v. U.S. Trustee, 355 B.R. 548, 553 (E.D. Va. 2006)).

The Bankruptcy Administrator argues that the requested 45% contingency fee is unreasonable, given that "Mr. Gordon served as special counsel to the trustee for a total of four months, the

litigation was already at the mediation phase when he was appointed as special counsel, and the work performed generally consists of preparing for mediation and attending a mediation." ECF No. 49 at 4. According to the Bankruptcy Administrator, "the standard of practice for contingency litigation in North Carolina is for a fee between 25% and 40%, for handling the entire case, less than the 45% requested in this case for post-petition representation of the Trustee." Id. Moreover, in considering the reasonableness of the requested fee, the Bankruptcy Administrator correctly contends that the Court should not ignore the fact that Mr. Gordon has asserted a claim for pre-petition fees in excess of $101,000 allegedly incurred in prosecuting the matter and preparing for mediation. Mr. Gordon, on the other hand, argues that the requested 45% contingency fee is reasonable, considering his experience, the time expended by Mr. Gordon and his staff, the complexity of the State Court Litigation, and the risk of non-payment of his fees. ECF No. 55 at 7-10. In fact, Mr. Gordon notes that his requested fee would be $34,586.75 if he and his staff were compensated at their customary rates. Id. at 10.

The Court agrees with the Bankruptcy Administrator's assertion that a 45% contingency fee and the amount of time spent on this matter is unreasonable under the circumstances of this case, considering the factors set forth in § 330 and Levin, including without limitation the amount of time purportedly

expended pre-petition, the amount in controversy, and the results obtained.[9]   However, the Court does not need to determine the amount of any fees that otherwise might be reasonable under § 330 because, as discussed below, the Fee Application will be denied as a result of Mr. Gordon's violations of Fed. R. Bankr. P. 2014.

## 2.   Disclosure Requirements Under Fed. R. Bankr. P. 2014

Under § 327(e), a trustee may retain "an attorney that has represented the debtor" as special counsel, subject to court approval, "if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter

---

[9] As Mr. Gordon himself notes, the base contract claim in the State Court Litigation was for $35,000.00.   ECF No. 55 ¶ 6.   In opposing the Motion to Reconsider, Mr. Gordon claimed that he would be "the most efficient and effective and knowledgeable counsel," given his pre-petition work in connection with the State Court Litigation.   ECF No. 21 at ¶ 7.   Mr. Gordon argued:

> In addition, Steri-Clean Inc. would deny to the Trustee and the Estate the very attorney who already has logged about 150 hours and many paralegal hours in this very case-fact gathering, document review, interviews, much legal research (on complex legal matters of franchise law, conflicts of law, enforceability of arbitration clause in multiple states, commercial fraud, unfair and deceptive acts and practices, federal court jurisdiction, business court rules, and much more), drafting complex multi-count, multi-party pleadings, filing of two suits, negotiations with multiple defense counsel and your own firm, and much, much more.

Id.   The Court questions the reasonableness of in excess of $130,000.00 in fees expended by Mr. Gordon and his staff on a $35,000.00 base contract claim that ultimately settled for $50,000.00.   Based on the customary hourly rates provided by Mr. Gordon, Mr. Gordon and his staff expended in excess of 385 hours on the State Court Litigation.   See id.; ECF No. 55 ¶ 20.   It is excessive that Mr. Gordon alone would expend 75.45 hours of billable time as special counsel, considering that Mr. Gordon and his staff had already expended as much as 269 hours of billable time on the case prior to his retention as special counsel and the State Court Litigation concluded with a mediated settlement agreement yielding $50,000.00.   Cf. Randolph v. PowerComm Constr., Inc., Case No. 18-1728, ___ Fed.Appx. ___, 2019 WL 3072555 (4th Cir. July 11, 2019) (reversing district court's discretionary award of approximately $174,000 in attorneys' fees under the Fair Labor Standards Act where the original claim exceeded $1,700,000, but ultimately was settled for $100,000).

on which such attorney is to be employed."  To retain special counsel, the trustee must file an application with the court which, _inter alia_, sets forth "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Fed. R. Bankr. P. 2014(a).  In addition, the professional to be employed as special counsel must submit a verified statement "setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  _Id._  In other words, the trustee and the professional to be employed as special counsel have a broad duty to "fully disclose at the time the application for employment is made all connections with the debtor, creditors, and other parties in interest."  _Diamond Lumber, Inc. v. Unsecured Creditors' Comm. of Diamond Lumber, Inc._, 88 B.R. 773, 776 (N.D. Tex. 1988).  "The duty to disclose is so broad because the court rather than the attorney must decide whether the facts constitute an impermissible conflict of interest."  _Id._ at 777; _see also_ _In re Persaud_, 496 B.R. 667, 675 (E.D.N.Y. 2013) ("The decision as to what information to disclose 'should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment.'" (quoting _In_

16

re Lee, 94 B.R. 172, 176 (Bankr. C.D. Cal. 1988))). Moreover, "case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises." In re W. Delta Oil Co., Inc., 432 F.3d 347, 355 (5th Cir. 2005) (quoting In re Metro. Envtl., Inc., 293 B.R. 871, 887 (Bankr. N.D. Ohio 2003)) (internal quotations omitted).

In this case, the Trustee sought to retain Mr. Gordon as special counsel. As required by Fed. R. Bankr. P. 2014, the Trustee filed the Application to Employ and the Gordon Affidavit in Support of the Application to Employ. However, neither the Application to Employ nor the Gordon Affidavit in Support of the Application to Employ disclosed that Mr. Gordon was a creditor of the Debtors—much less that Mr. Gordon was the largest creditor in this case as a result of significant time purportedly attributable to development, discovery, and litigation regarding the very claim for which the Trustee sought his employment. This failure to disclose violated Fed. R. Bankr. P. 2014, and materially affected this Court's ability to assess the reasonableness of any proposed contingency fee.

The Trustee, in response to the Motion to Reconsider, argued that Mr. Gordon's status as a creditor was in fact disclosed to the Court. The Trustee asserted:

> Steri-Clean, Inc. contends that I was required to tell
> the Bankruptcy Court that attorney Harry G. Gordon was
> indeed a creditor of the estate. Attorney Gordon's claim
> is set forth in the bankruptcy file. The Court needs
> only look at the Application I filed, which reveals that
> Harry Gordon was counsel for the debtor in the
> consolidated case at the time the debtor filed
> bankruptcy. Surely it would follow from that that
> attorney Gordon would be owed some money.

ECF No. 21 at ¶ 6. Mr. Gordon now asserts, "It was my
understanding, perhaps wrong, that matters in a Debtor's Petition,
such as my status as a creditor constituted disclosure and notice
to the Court." ECF No. 50 ¶ 7. This presumption is indeed
incorrect. The argument advanced by the Trustee and Mr. Gordon is
at odds with the plain language of Fed. R. Bankr. P. 2014 and
decades of case law. See Fed. R. Bankr. P. 2014(a) ("The
application shall state . . . to the best of the applicant's
knowledge, all of the person's connections with the debtor . . .
. The application shall be accompanied by a verified statement of
the person to be employed setting forth the person's connections
with the debtor . . . ."); In re Jennings, 199 F. App'x. 845, 848
(11th Cir. 2006) ("Bankruptcy courts are not obliged to hunt around
and ferret through thousands of pages in search of the basic
disclosures required by Rule 2014."); In re Sabre Int'l, Inc., 289
B.R. 420, 427 n.22 (Bankr. N.D. Okla. 2003) ("Disclosure must be
made in the application for employment and in the declarations and
affidavits submitted in support of such applications. Any other
form of disclosure is meaningless for purposes of § 327 and

Bankruptcy Rule 2014."); <u>In re EWC, Inc.</u>, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) ("The bankruptcy court has neither the obligation nor the resources to investigate the truthfulness of information supplied, or to seek out conflicts of interest not disclosed."); <u>In re Saturley</u>, 131 B.R. 509, 517 (Bankr. D. Me. 1991) ("Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient."); <u>In re B.E.S. Concrete Prod., Inc.</u>, 93 B.R. 228, 236 (Bankr. E.D. Cal. 1988) ("The disclosures must appear in the application and declaration required by Bankruptcy Rule 2014(a).  It is not sufficient that the information might be mined from petitions, schedules, section 341 meeting testimony, or other sources.").

The Court also is concerned that Mr. Gordon failed to disclose that he intended to file an adversary proceeding against the Debtors, requesting that the Court either deny the Debtors' discharge or determine that the debt owed by the Debtors to Mr. Gordon is nondischargeable, especially where the claims against the Debtors are based at least in part on allegations which are adverse to the position of the Trustee in the Steri-Clean litigation.  Mr. Gordon alleges that "the essential facts that led to [the] filing of the Complaint Objecting to Discharge of Debtors and Dischargeability of Debts . . . came primarily from post-

hiring disclosures." ECF No. 55 ¶ 10.[10] As such, Mr. Gordon argues that "it would have been impossible for attorney Gordon to make any such disclosure at the time that the [Fee Application] was prepared and the Court's Order was signed." Id. ¶ 9. On the contrary, Mr. Gordon was aware of most of the operative facts underlying the Complaint in the adversary proceeding well before the mediation on March 19, 2019. For example, in his Complaint, Mr. Gordon asserts that the debt owed by the Debtors to Mr. Gordon is non-dischargeable under § 523(a)(2)(A).[11] Adv. Pro. Dkt. No. 1 ¶ 38. Specifically, Mr. Gordon alleges that he requested that the Debtors execute a promissory note for his legal fees along with a

---

[10] This is belied by Mr. Gordon's allegations in the adversary proceeding and the record in this case. Mr. Gordon alleges that he did not learn that the male Debtor would not cooperate with special counsel in the State Court Litigation until shortly before the mediation on March 19, 2019. ECF No. 55 ¶ 10. However, Mr. Gordon, in the Gordon Affidavit in Support of the Fee Application, claims that he moved to extend the deadline to object to the Debtors' discharge or commence an action to determine the dischargeability of any debt because "[he] was very concerned about the failure of the Debtors to cooperate in the litigation, which could make the case virtually worthless." ECF No. 40 ¶ 12. Mr. Gordon moved to extend the deadline to object to the Debtors' discharge or commence an action to determine the dischargeability of any debt on February 25, 2019, some three weeks before the mediation. Mr. Gordon further alleges, "[I]t was during the Mediation that opposing counsel and the Mediator revealed to the Trustee and attorney Gordon the existence of a prior [Steri-Clean Franchise] Application signed by both Debtors stating their opinion that their home was worth $250,000 and stating the fact that they had no mortgage[.]" ECF No. 55 ¶ 10. Finally, Mr. Gordon alleges that his "investigation after the Mediation revealed that the Debtors had relied upon an appraisal—a most unusual 'residence' appraisal Debtors purchased—that failed to include any value at all for the 4-bedroom, 4-bathroom house constructed on the property and valued by the Tax Department at $143,132." Id. Nevertheless, the schedules filed with the petition in this case value the residence at $130,000. ECF No. 1 at 10.

[11] Mr. Gordon has since filed a Consolidated Proposed Amended Complaint, Adv. Pro. Dkt. No. 32, which alleges that the debt owed by the Debtors to Mr. Gordon is non-dischargeable under § 523(a)(2)(A) and (B). Id. at 32.

deed of trust secured by their home.  Id. ¶ 27.c.  In response to
Mr. Gordon's request, the Debtors purportedly sent Mr. Gordon an
email stating that they no longer owned their home and presumably
could not execute a promissory note secured by their home.  Id.
¶ 27.d.  At the latest, Mr. Gordon learned of the essential fact
underlying his § 523(a)(2) claim—the allegedly false statement
from the Debtors—when Debtors listed the residence on their
schedules in this case after purportedly denying ownership of the
home on August 24, 2018.  Id.  Mr. Gordon further alleges that his
pre-petition debt should be excepted from the Debtors' discharge
because they misrepresented to him that they would never file
bankruptcy again.  It is difficult to understand how Mr. Gordon
possibly could not have been aware of the basis for that claim at
the time he applied to be employed in their bankruptcy case.

    It is well settled that the Court may deny compensation to a
professional when the professional fails to comply with the
disclosure requirements of Fed. R. Bankr. P. 2014.  In re Crivello,
134 F.3d 831, 836 (7th Cir. 1998) ("Though [Fed. R. Bankr. P. 2014]
allows the fox to guard the proverbial hen house, counsel who fail
to disclose timely and completely their connections proceed at
their own risk because failure to disclose is sufficient grounds
to revoke an employment order and deny compensation."); In re
Private Asset Grp., Inc., 579 B.R. 534, 542 (Bankr. C.D. Cal. 2017)
("Importantly, a failure to comply with the disclosure rules is a

sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any provision of the Bankruptcy Code or Bankruptcy Rules."); Matter of Hutch Holdings, Inc., 532 B.R. 866, 881 (Bankr. S.D. Ga. 2015) ("Failure to fully disclose the relationships as required by law can warrant disqualification, denial of compensation, and disgorgement of any compensation already received." (quoting In re Adam Furniture Indus., Inc., 158 B.R. 291, 299 (Bankr. S.D. Ga. 1993))); In re Black Hills Greyhound Racing Ass'n, 154 B.R. 285, 293 (Bankr. D. S.D. 1993) ("If the attorney to be employed fails to disclose a relationship that presents a potential area of conflict, compensation to that attorney may later be denied."); In re Tinley Plaza Assocs., L.P., 142 B.R. 272, 278 (Bankr. N.D. Ill. 1992) ("Failure to meet the requirements of Rule 2014(a) is enough by itself to disqualify an attorney and deny compensation even if no conflict of interest exists.").

The Court recognizes the "the denial of fees for work already performed by counsel . . . may work a harsh result," In re Marine Power & Equip. Co., Inc., 67 B.R. 643, 654 (Bankr. W.D. Wash. 1986), but the Court warned Mr. Gordon at the February 12 hearing that his failure to comply with Fed. R. Bankr. P. 2014 would be relevant to the Court's consideration of any application for compensation and informed Mr. Gordon that he could file a motion to withdraw if he was unwilling to continue to represent the

Trustee.[12]    Furthermore,    the    circumstances    of    this    case—circumstances entirely of Mr. Gordon's own making—warrant a denial of the fees requested in the Fee Application.  Mr. Gordon violated Fed. R. Bankr. P. 2014 by failing to disclose in the Gordon Affidavit in Support of the Application to Employ that he already was asserting entitlement to over $96,000 in fees for his work in connection with the litigation, which according to his own affidavit prepared the case for mediation.  Had the amount of pre-petition fees been disclosed, it is extremely unlikely the Court would have approved a 45% contingency fee.  The recovery from the State Court Litigation settlement is the central value to be distributed by the Trustee to unsecured creditors, and Mr. Gordon's undisclosed prepetition claim in this case makes up approximately 70% of the unsecured claims.  To the extent that he receives a distribution in this case, the effective contingency fee would be substantially in excess of the ostensibly requested 45%.  This omission, therefore struck at the heart of the terms under which Mr. Gordon sought to be employed and prevented the Court from conducting the very type of analysis that Rule 2014 is meant to facilitate.  His failure to disclose is compounded by the conflicts of interest that have come to light in the discharge and dischargeability litigation, at least some of which additionally

---

[12] See supra note 3.

23

should have been disclosed in connection with the Application to Employ.   Therefore, the Court will deny the Fee Application in full.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that the Fee Application is denied.

[END OF DOCUMENT]

## PARTIES TO BE SERVED

Harry Glen Gordon
Gordon Law Offices
330 S. Greene Street, Ste. 300
Greensboro, NC 27401

Benjamin D. Busch
600 Green Valley Road, Ste. 210
Greensboro, NC 27408

Gerald S. Schafer
Chapter 7 trustee
220 Commerce Place
Greensboro, NC 27401

William P. Miller
Bankruptcy Administrator
101 S. Edgeworth Street
Greensboro, NC 27401

Rodney Wayne Etheridge
Sandra Lynn Etheridge
876 Clark Rd.
Snow Camp, NC 27349